**NOT FOR PUBLICATION**

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

- - - - - - - - - - - - - - - - - - - - - - - - - - -X
In re:   HALA WASSEF, Debtor.

LOCAL 375 CSTG PROFESSIONAL
EMPLOYEES LEGAL SERVICES as assignees
for PETER GRANDINETTI and BETTY J.
GRANDINETTI,

|  |  |
|---|---|
| Plaintiffs, | Chapter 7 |
|  | Case No: 02-31259 RG |
| v. |  |
|  | Adv. Pro. No: 04-1759 RTL |
| HALA WASSEF, Defendant. |  |

- - - - - - - - - - - - - - - - - - - - - - - - - - -X
VIVIAN ACKAD and WAJI GOBRIAL,
                 Plaintiffs,

            v.                                              Adv. Pro. No: 05-2621 RTL

HALA WASSEF, Defendant.
- - - - - - - - - - - - - - - - - - - - - - - - - - -X
AHMED SEYAM, Plaintiff,

            v.                                              Adv. Pro. No: 05-2818 RTL

HALA WASSEF, Defendant.
- - - - - - - - - - - - - - - - - - - - - - - - - - -X

**OPINION**

**APPEARANCES:**
TULIPAN & CONK, PC
George W. Conk, Esq.
Attorneys for Plaintiff Local 375 CSTG Prof. Employees Legal Services

FRANZBLAU DRATCH
Stephen N. Dratch, Esq.
Attorneys for Plaintiff Vivian Ackad & Waji Gobrial

REILLY SUPPLE & WISCHUSEN, LLC
James G. O'Neill, Esq.
Attorneys for Plaintiff Ahmed Seyam

ROBERT M. RICH, Esq.
Attorney for Debtor/Defendant

**RAYMOND T. LYONS, U.S.B.J.**

## FACTS

These three adversary proceedings were consolidated for trial. Although the plaintiffs are different, the essential facts all deal with the same transaction – a sale of real property by the Debtor, Ms. Wassef, when a judgment against her was a lien against the property and the affidavit of title she signed failed to mention that judgment as an outstanding lien. Plaintiffs all claim Ms. Wassef's affidavit was false and that her debts to them should be excepted from discharge under 11 U.S.C. § 523(a)(2)(A).

Plaintiffs' pleadings are somewhat inartful. For example, they cite Section 523(a)(10) that makes non-dischargeable in a subsequent bankruptcy case debts for which a discharge was denied under Section 727 in a prior case. There was no proof that Ms. Wassef filed more than one case or was ever denied a discharge, so Section 523(a)(10) does not apply. Plaintiffs also cite Section 523(a)(6) – the willful and malicious exception to discharge. To succeed on that count plaintiffs would have to prove that the Debtor intended to cause injury to them. *Kawaauhau v. Geiger*, 523 U.S. 57 (1998). They have offered no proof in that regard. It really comes down to the false affidavit of title and one alleged misrepresentation to her lawyer, Ahmed Seyam ("Seyam").

I conclude that plaintiffs have failed to prove all the elements of a cause of action under

Section 523(a)(2)(A); in particular, that Debtor made a false statement with knowledge of its falsity and that plaintiffs justifiably relied on it. Judgment will be entered for the Defendant/Debtor finding her debts to Plaintiffs, if any, discharged.

## JURISDICTION

This court has jurisdiction of these adversary proceedings under 28 U.S.C. § 1334(b), 28 U.S.C. § 157(a) and the Standing Order of Reference by the United States District Court for the District of New Jersey dated July 23, 1984, referring all proceedings arising under Title 11 of the United States Code to the bankruptcy court. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(I) dealing with determining dischargeability of particular debts.

## FINDINGS OF FACT

The Debtor, Hala Wassef, filed a voluntary petition under chapter 7 of the bankruptcy code on February 5, 2002. None of the plaintiffs was scheduled as a creditor because Ms. Wassef had no reason to believe that Plaintiffs Vivian Ackad ("Ackad"), Waji Gobrial ("Gobrial"), Ahmed Seyam ("Seyam") or Local 375 CSTG Professional Employees Legal Services ("Legal Services") had a claim against her. Former plaintiffs, Peter and Betty J. Grandinetti were not listed because Ms. Wassef had not heard from them in over two years prior to her bankruptcy and did not think they still had a claim against her. When a lawsuit was started in state court in 2003, Ms. Wassef amended her schedules to include the plaintiffs. These adversary proceedings followed.

Hala Wassef married a Mr. Amine in 1992. On December 11, 1996, Ms. Wassef's parents deeded to her and her sisters real property known as 6 Alicia Court, Cedar Grove, New Jersey. On February 26, 1998, one of the sisters relinquished her interest to the other two. In

3

that same year, Hala Wassef started divorce proceedings against Mr. Amine requesting, inter alia, support for her two young children.  Hamdi Rifai, Esq. represented her in the matrimonial case.  Subsequently, on September 17, 1999, the other sister deeded her interest to Hala Wassef, completing her 100% ownership of the fee.

In November 1999, Ms. Wassef (named Hala Amine in the contract) agreed to sell the Cedar Grove real estate to Peter and Betty J. Grandinetti.  Some dispute arose over a chandelier and Ms. Wassef refused to close, against the advice of her lawyer, Hamdi Rifai, Esq.  The Grandinettis sued for breach of contract.  Ms. Wassef was served just prior to learning that her grandfather was ill in Egypt and died.  She went to Egypt for the funeral and did not return to the U.S. for many months.  In the meantime, the Grandinettis obtained a default judgment against Ms. Wassef, named as Hala Amine, on August 13, 1999, in the amount of $23,407.97 that they docketed on November 30, 1999.

Ms. Wassef learned of the judgment when she returned to this country and asked her lawyer, Mr. Rifai, to contest it.  Ahmed Seyam, Esq., an associate in the firm (and one of the Plaintiffs in these adversary proceedings) was assigned to represent Ms. Wassef.  He filed a motion to set aside the default judgment and argued in the Superior Court of New Jersey.  The motion was denied on January 28, 2000 .

There was conflicting testimony and evidence as to whether Ms. Wassef was present in court that day.  Ms. Wassef denies being there.  At his deposition, Mr. Seyam testified that Ms. Wassef was not there, although he equivocated.  Grandinettis' lawyer sent a letter stating that Ms. Wassef was in court – although in another writing Grandinettis' lawyer refers to Ms. Wassef as a male.  At trial Mr. Seyam vacillated.  He felt 65% certain Ms. Wassef accompanied him to

4

court and 35% doubtful that she did.  I find that Ms. Wassef was not in court when her motion to vacate the default judgment was denied.  I accept Ms. Wassef's testimony as accurate.  In my experience, motions in state court are decided on affidavits, without testimony, and clients rarely attend motion arguments.  The statement in a letter by Grandinettis' lawyer that Ms. Wassef was in court was a mistake.  Mr. Seyam's sketchy recollection and variable certainty is unreliable, at best.

Again there was conflicting testimony as to whether Ms. Wassef knew the motion to set aside Grandinettis' judgment was unsuccessful.  Mr. Seyam testified that he "probably" informed Ms. Wassef by telephone, letter and in person that she had lost her motion.  However, no letter to that effect was produced – not even a cover letter forwarding a copy of the order denying the motion.  Ms. Seyam could not remember specifically whether he spoke to Ms. Wassef in court, by telephone, or at his office to inform her that the Grandinetti judgment stood; but, he had a firm recollection of doing so.  Ms. Wassef recalls being told by Mr. Seyam that the Grandinetti matter had been taken care of.  That was the last she heard.

Allowing for the fact that these events occurred over six years ago, with memory being fallible, and the mind tending to create favorable, but inaccurate recollection, I find that what happened was Ms. Wassef turned the Grandinetti matter over to Mr. Rifai, who assigned it to Mr. Seyam, who filed the motion to set aside the judgment – and that's the last she heard.  She gave it to her lawyer and never gave it another thought – which is understandable since her primary focus was on supporting her two young children and seeking help from their father in the matrimonial court.  Mr. Seyam's recollection is unreliable and, as will be discussed later, subject to question.

On April 7, 2000, the transaction that gives rise to these adversary proceedings commenced. On that day, Ms. Wassef signed a contract with Waji Gobrial and Vivian Ackad to sell the Cedar Grove real estate. The buyers went to a lawyer, Michael Coppola, Esq. to represent them. Ms. Wassef retained the Rifai firm and Mr. Seyam to represent her. Michael Coppola ordered a title insurance commitment from Vested Title, an agent of Chicago Title Insurance Company. The binder was issued on April 17, 2000, showing title in Hala Wassef a/k/a Hala Amine and attaching a search disclosing Grandinettis' judgment against Hala Amine. Mr. Coppola sent the title commitment to Mr. Seyam on April 19, 2000, but Mr. Seyam claims it did not include a judgment search.

The buyers changed lawyers, and Bennett Dressler, Esq. of Legal Services substituted as their lawyer on June 12, 2000. In anticipation of closing, the clerical staff of the Rifai firm prepared the deed and affidavit of title for Ms. Wassef's signature. On July 12, 2000, Mr. Seyam met with Ms. Wassef and reviewed the affidavit of title with her.

Mr. Seyam knew that he had lost the motion to vacate the Grandinetti judgment, yet he permitted Ms. Wassef to sign the affidavit of title without excepting that judgment. He claims that Ms. Wassef told him that she had hired another lawyer and that the Grandinetti judgment had been "taken care of." He further claims that he accepted his client's story without further inquiry or documentation. He says he never saw a judgment search, however, his file contained the title commitment and at least two copies of a judgment search reporting the Grandinetti judgment.      Ms. Wassef signed the affidavit of title prepared by her lawyer, whom she trusted, after reviewing it with him and assuming it was accurate. The affidavit of title states in various paragraphs:

6

> **2. Name, Age and Residence.** We have never changed our names or used any other names. We are citizens of the United States and at least 18 years old. We will live at 4 Mountainridge Drive, Cedar Grove, New Jersey.
> **5. Liens or Encumbrances**. We have not allowed any interests (legal rights) to be created which affects our ownership or use of this property. No other persons have legal rights in this property, except the rights of utility companies to use this property along the road or for the purpose of serving this property. There are no pending lawsuits or judgments against us or other legal obligations which may be enforced against this property. No bankruptcy or insolvency proceedings have been started by or against us. We have never been declared bankrupt. No one has any security interest in any personal property or fixtures on this property. All liens (legal claims, such as judgments) listed on the attached judgment or lien search are not against us, but against others with similar names.

No copy of a judgment search was attached to the affidavit of title and Mr. Seyam never showed the judgment search to her. Although the affidavit of title was false because the Grandinettis' judgment was a lien against the real property, Ms. Wassef did not know it was false and did not intend to deceive anyone.

Mr. Seyam also testified that he had a detailed conversation with the buyer's new lawyer, Bennett Dressler, in which he described Ms. Wassef's reneging on the Grandinetti contract, the judgment and his unsuccessful motion to vacate the judgment. Mr. Seyam claims he warned Mr. Dressler about Ms. Wassef's "propensities" and to carefully search for judgments. Mr. Dressler testified he could not recall any such conversation. To the contrary, he testified that such disparagement of a client by her own lawyer would be remarkable and something he would likely remember. His firm belief is that he never had such a discussion with Mr. Seyam.

Sometime in 2003, the buyers went to refinance their mortgage. Another title search revealed the Grandinettis' judgment was still outstanding. Naturally, they complained to their

lawyer, Dressler. Legal Services paid Grandinettis and took an assignment of the mortgage. It then released the Cedar Grove property from the judgment lien. Although the buyers now have clear title, they claim incidental damages from being unable to refinance their mortgage.

Legal Services has a claim against Ms. Wassef as assignee of the Grandinetti judgment – of course that debt is dischargeable. The union claims that Ms. Wassef defrauded Grandinettis or intentionally injured them when she sold property subject to their lien without paying it off. This claim is of dubious merit – no legal authority was cited. The union's best status is as subrogee to the buyers, but it did not articulate that claim. In the state court action, the union and Mr. Dressler were sued for legal malpractice. They could have an indemnification claim that might be non-dischargeable if Ms. Wassef's affidavit of title was fraudulent.

Mr. Seyam has, also, been sued by the buyers and he claims he was mislead by Ms. Wassef's alleged statement that she hired another lawyer and "took care of" the Grandinettis' judgment.

**Credibility**

Testimony conflicts in several key aspects. It is essential whether I believe Ms. Wassef or Mr. Seyam. To decide which of the conflicting stories to believe, I have to decide which witnesses are credible and which are not. Let's start with the last witness, Bennett Dressler. He represented the buyers, Ackad and Gobrial, at the closing. He was also responsible for assuring that their purchase money lender received a first lien on the property and acted as closing agent for the title company. He had a judgment search showing Grandinettis' lien against Hala Amine and a title history disclosing that Hala Wassef was also known as Hala Amine. He readily admits that he should have seen this information as a "red flag" and should have questioned Ms.

Wassef's affidavit of title – especially since a copy of the judgment search was not attached. His willingness to concede his shortcomings leads me to conclude that Mr. Dressler is telling the truth. He is the most credible witness and his memory is the most accurate.

I find as a fact that Mr. Dressler never had a conversation with Mr. Seyam about the Grandinetti judgment. That means that Mr. Seyam's explicit testimony is mistaken, at best, and possibly fabricated. If I judge Mr. Seyam's memory to be faulty where it conflicts with Mr. Dressler's, how should I treat other conflicts?

I think it is fair to say after having found Mr. Seyam's testimony unreliable where it conflicts with Mr. Dressler's, I have good reason to doubt the veracity of his testimony where it conflicts with Ms. Wassef's. Crucially, Mr. Seyam says he questioned Ms. Wassef after April 2000 about the Grandinetti judgment and accepted her statement that she hired another lawyer and "took care of it." I find it hard to believe that a lawyer would not seek documentation to verify that a judgment he knew existed had been "taken care of." It also defies credibility that Mr. Seyam thought the judgment search against Ms. Wassef a/k/a Amine was clear when two copies of judgment searches showing the Grandinetti judgment were in his file.

Counsel for the buyers, Ackad and Gobrial, aruges that Mr. Seyam is more credible than Ms. Wassef because he would be unlikely to lie regarding a transaction where his fee was a measly $950.00. Looking at the conflicting stories, I find it unlikely that Ms. Wassef, a lay person, would expect her lawyer to swallow a story that she "took care of" the Grandinetti judgment and that the buyers would not discover the lien.

Because I find Mr. Seyam's testimony inaccurate regarding his conversation with Mr. Dressler, I am dubius about the rest of his testimony. That leads me to conclude that Ms.

9

Wassef's recollection is more accurate than Mr Seyam's where they conflict. With regard to the crucial testimony as to whether Ms. Wassef said she "took care of" the Grandinetti judgment, I find the evidence does not weigh in favor of accepting that.

## DISCUSSION

**Fraud**

"The overriding purpose of the Bankruptcy Code 'is to relieve debtors from the weight of oppressive indebtedness and provide them with a fresh start.'" *Starr v. Reynolds (In re Reynolds)*, 193 B.R. 195, 200 (D.N.J. 1996) (quoting *Insurance Co. of N. Am. v. Cohn (In re Cohn)*, 54 F.3d 1108, 1113 (3d Cir. 1995)). Accordingly, exceptions to discharge are to be narrowly construed. A countervailing policy is that debts incurred through fraud should not be discharged. The discharge is reserved for the honest but unfortunate debtor. *Grogan v. Garner*, 498 U.S. 279, 286-287 (1991). "Where a debtor has committed fraud under the code, he is not entitled to the benefit of a policy of liberal construction against creditors." *Cohen v. De La Cruz (In re Cohen)*, 106 F.3d 52, 59 (3d Cir. 1997), *aff'd* 523 U.S. 213 (1998). This countervailing policy is codified in § 523(a)(2)(A) of the Bankruptcy Code which provides:

> A discharge under section 727 . . . of this title does not discharge
> an individual debtor from any debt . . . for money, property,
> services, or an extension, renewal, or refinancing of credit, to the
> extent obtained by false pretenses, a false representation, or actual
> fraud. . . .

This fraud exception to discharge has been part of the bankruptcy law of the United States since 1898. *Cohen v. De La Cruz*, 523 U.S. 213, 217 (1998), *Field v. Mans*, 516 U.S. 59, 64-66 (1995). Since Congress has not provided a separate definition, fraud has the same meaning in the Bankruptcy Code as in the common law of torts. Id. at 69-70.

10

> The operative terms in § 523(a)(2)(A), on the other hand, "false pretenses, a false representation, or actual fraud," carry the acquired meaning of terms of art. They are common-law terms, and, as we will shortly see in the case of "actual fraud," which concerns us here, they imply elements that the common law has defined them to include. . . .
>
> It is . . . well established that "[w]here Congress uses terms that have accumulated settled meaning under . . . the common law, a court must infer, unless the statute otherwise dictates, that Congress means to incorporate the established meaning of these terms." . . .
>
> [W]e will look to the concept of "actual fraud" as it was understood in 1978 when that language was added to § 523 (a)(2)(A). Then, as now, the most widely accepted distillation of the common law of torts was the Restatement (Second) of Torts (1976), published shortly before Congress passed the Act.

Id. (citations omitted).

Following the Court's guidance, one should look to the Restatement for the meaning of fraud. The Restatement (Second) of Torts, § 525, sets forth the law regarding liability for fraudulent misrepresentation.

> One who fraudulently makes a misrepresentation of fact, opinion, intention or law for the purpose of inducing another to act or to refrain from action in reliance upon it, is subject to liability to the other in deceit for pecuniary loss caused to him by his justifiable reliance upon the misrepresentation.

As the Supreme Court pointed out, "courts that have previously construed this statute, routinely requir[e] intent, reliance, and materiality before applying § 523(a)(2)(A)." *Field v. Mans*, 516 U.S. at 68. Thus, for a debt to be nondischargeable under § 523(a)(2)(A) the creditor must prove that:

(1) the debtor represented a fact, opinion, intention or law;

(2) the representation was false;

(3) the representation was material;

(4) the debtor obtained money, property or services through the misrepresentation;

(5) the debtor knew at the time that the statement was false (or was made with reckless disregard for its truth);

(6) the debtor intended the creditor to rely on the statement;

(7) the creditor actually relied on the statement;

(8) the reliance was justified;

(9) the creditor sustained damage; and

(10) the damages were the proximate result of the false representation.

*De La Cruz v. Cohen (In re Cohen)*, 191 B.R. 599, 604 (D.N.J. 1996), *aff'd sub nom.* 106 F.3d 52 (3d Cir. 1997), *aff'd* 523 U.S. 213 (1998). *AT&T Universal Card Servs. Corp. v. Wong (In re Wong),* 207 B.R. 822, 826 (Bankr. E.D.Pa. 1997). Each element of the objection must be proved by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. at 287-88, *Starr v. Reynolds (In re Reynolds)*, 197 B.R. 204, 205 (Bankr. D.N.J. 1996).

In this case, the four plaintiffs have different claims against the Debtor, but they all stem from the affidavit of title. The most direct claim is by the buyers, Ackad and Gobrial. They paid Ms. Wassef for clear title to the real property and accepted her affidavit of title. Clearly she breached her contract with them. Legal Services, as assignee of Grandinettis' judgment, has a dischargeable claim. I reject the theory that Ms. Wassef defrauded the Grandinettis' by selling property subject to their judgment and receiving proceeds without paying them. Legal Services could be subrogated to the buyers' claim for fraud or could have a claim for indemnification against Ms. Wassef since they paid the judgment and released the property. Nevertheless, their

claim hinges on whether the affidavit of title was fraudulent.

The affidavit of title is false. There are several inaccuracies. First, paragraph 2 states the deponent has never used another name. That was false. She held title to the Cedar Grove property for a time in the name of Hala Amine. She knew that. Mr. Seyam knew that. Mr. Dressler knew that. The failure to disclose that Hala Wassef was also known as Hala Amine was a misrepresentation – but it is of no moment since it caused no damage.

The affidavit of title was false regarding Ms. Wassef's marital history. It failed to describe that she was married to Mr. Amine. Although a divorce action was pending it was not finalized until after the closing, July 12, 2000. Both she and Mr. Seyam knew that. This misrepresentation was, also, without consequence.

Lastly, the affidavit of title failed to take exception for the Grandinetti judgment in the blanket disclaimer of no liens. This was false. Mr. Seyam knew, or should have known this – so should Mr. Dressler. But, Ms. Wassef did not know this. She hired the Rifai law firm, who assigned Mr. Seyam the task of dealing with Grandinetti. As far as she knew, they did what they were hired to do. So when she reviewed the affidavit of title, specifically paragraph 5's disclaimer of any liens, she had no reason to raise the Grandinetti matter – particularly where the same lawyer she entrusted with handling the Grandinetti matter was presenting the affidavit for her signature. It is more likely that Ms. Wassef trusted her lawyer not to ask her to sign a false affidavit, than that a lawyer would accept his client's statement that a judgment was "taken care of" without documentation. So I find that Plaintiffs have not proved by a preponderance of the evidence that Ms. Wassef knowingly misrepresented that there were no liens on the Cedar Grove property.

I also find that Plaintiffs have failed to prove that any of them justifiably relied on the misrepresentation. Legal Services acted through Mr. Dressler. He readily admits that he blew it. He had the judgment search showing Grandinettis' judgment against Hala Amine. He had the title history showing Hala Amine. He had the title history showing Hala Wassef was also known as Hala Amine. He accepted an affidavit of title without the judgment search attached. He was not justified in relying on a clean affidavit without the judgment search attached in light of his knowledge that the Grandinetti judgment was an obvious lien.

The buyers, Ackad and Gobrial, relied on their attorney, Dressler, to obtain good title. His knowledge must be imputed to them, so that they did not justifiably rely on the false affidavit of title.

Lastly, Plaintiff Seyam, who prepared the affidavit of title, explained it to Ms. Wassef, knew that he had lost the motion to vacate the judgment, and had two copies of a judgment search in his file, and no documentation that the judgment had been "taken care of," could hardly have justifiably relied on a false affidavit. I have already found that the alleged misrepresentation that Ms Wassef hired another lawyer and "took care of" the Grandinetti judgment, was not proven by a preponderance of the evidence.

Thus, while Ms. Wassef signed an affidavit of title that misrepresented the absence of liens on the Cedar Grove property, she did not know the statement was false and none of the Plaintiffs justifiably relied thereon. Plaintiffs have failed to prove by a preponderance of the evidence all the elements of Section 523(a)(2)(A). Judgment will be entered for Defendant/Debtor determining Plaintiffs' debts dischargeable and, since a discharge order has previously been entered, those debts have been discharged.

There is one additional argument by Legal Services that is without merit. Because Mr. Dressler failed to secure clear title for the buyers, Legal Services paid Grandinetti, took an assignment of their judgment, then released the judgment lien on the Cedar Grove property. Legal Services claims that Ms. Wassef defrauded the Grandinettis when she sold the Cedar Grove property and received the net proceeds of sale without paying them. Legal Services asserts that Grandinettis' lien attached to the proceeds of sale and that Ms. Wassef's receipt of those proceeds was a wilful and malicious injury to their property under Section 523(a)(6). As assignees of the Grandinetti judgment, Legal Services asks that this judgment debt be excepted from discharge. Not only has Legal Services failed to cite any authority for this unique proposition, it failed to show that the Grandinettis suffered any damage. Their lien remained on the property and they were paid. Ms. Wassef's sale of the property did not hurt them.

## CONCLUSION

Plaintiffs have failed to prove by a preponderance of the evidence that the Debtor, Hala Wassef, knew that her affidavit of title was false and that they justifiably relied upon it. Judgment will be entered finding no cause of action under 11 U.S.C. § 523(a)(2)(A) and determining Plaintiffs' debts to be dischargeable.


Dated: August 21, 2006                              /S/ **Raymond T. Lyons**
                                                    United States Bankruptcy Judge